## COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY
v.
### Alma Juanita R. DORMAN, a widow.
### No. 15147.

United States Court of Appeals
Fifth Circuit.
April 20, 1955.

H. O. Pemberton, J. Velma Keen, Keen, O'Kelley & Spitz, Tallahassee, Fla., S. Augustus Black, Columbia, S. C., for appellant.

George W. Atkinson, Atkinson & Williams, Tallahassee, Fla., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellant seeks reversal of a verdict and judgment in favor of appellee for the sum of $2,625 with interest and attorney's fees of $875 for the accidental death of her husband, under a policy of insurance. There was no dispute that the death had been accidental. Several errors are charged, including denial of appellant's motion for summary judgment and the refusal to direct a verdict in its favor upon the whole case. The issue is largely one of fact and depends upon whether the policy was in force when the insured was killed in an automobile accident on November 17, 1952.

Briefly stated, the proven facts are these: the original policy was issued on June 30, 1950, for a monthly premium of $4 with a grace period of fifteen days. The one due June 30, 1952, was not paid, and the policy lapsed on July 15, following. It was reinstated nine days later by the payment of one month's premium, thereby changing the due date to the 24th of each month and making the next one payable on August 24, 1952. On the 22nd of that month, the insured made written application for a larger policy carrying a premium of $10 per month and, at the same time, executed a request that the original be cancelled upon the issuance of the new one thus applied for. He also enclosed with those two documents twelve checks for $10 each, the first dated August 24, 1952, and the other eleven post-dated the 24th of each succeeding month to be applied as the premiums became due over a total period of one year. (Appellant concedes that the old policy remained in force while the application was under consideration.) On September 22, appellant wrote the insured as follows:

"This is in further regard to the application for an Executive and Professional Accident Policy which was placed through the representative, Mr. L. F. Ewing.

"We indeed regret the fact that we are unable to take favorable action on this application and that it is having to be declined. We have voided the Request for Cancellation signed for Policy No. SG 24118–MSR.

"Our records indicate that the policy was reinstated with accumulations on July 24, 1952 and that we applied a monthly premium payment for the reinstatement. As we have been processing the current applica-

tion during the time this monthly premium payment applied we believe that you desire that we apply premium payments to keep this policy in continuous force.

"We have enclosed eleven of the $10.00 checks signed. As we have applied a check as a monthly premium deposit, we have credited the amount of $8.00 of this check for two monthly premium payments for Policy No. SG 24118–MSR or for the period from August 24 to October 24, 1952. We have enclosed our check for $2.00 to refund the difference.

"We have received checks for the remainder of the current premium payment year. If you will please affix your signature to these checks and place them in the envelope enclosed they will come to this office to be applied as due.

"If our manner of handling due monthly premium payments for Policy No. SG 24118–MSR does not meet with your approval we will make the refund if you request it. This policy gives you excellent accident insurance protection and we wish to assure you of our continued desire to render you service as a policyholder."

The "remainder of the current premium payment year" would have expired July 24, 1953; hence nine checks for $4 each were required, or from October 24, 1952 to June 24, 1953, to complete the year.

Failing to receive a prompt reply to its letter of September 22, appellant wrote Dorman again on October 3, as follows:

"This is in further regard to our September 22nd letter.

"The records would indicate that we have not received a reply in this connection which would indicate that our manner of applying due premium payments to Policy No. SG 24118–MSR met with your approval. If you will please sign the $4.00 checks mailed with this letter and

return them to us they will be filed to be deposited as due for the remainder of the current premium payment year.

"We will continue the file in suspense. We wish to assure you of our continued desire to render you service as a policyholder."

Still having no reply, appellant wrote its agent on October 15th, nine days before the premium for that month was due; and the agent called the insured's home to remind him to mail the checks. An envelope containing signed checks arrived in appellant's home office in Columbia, South Carolina, and was stamped as received on November 13, 1952.

Appellee's counsel, in putting on her case, stated:

"If the Court please, I would now like to read the amounts of the post-dated checks which were sent to the company.

"The Court:
  "All right, sir.

"Mr. Atkinson:
  "A check dated 11/24/52 in the amount of $4.00.
  "Check dated 12/24/52 $4.00.
  "A check dated 1/24/53 $4.00.
  "A check dated 2/24/53 $4.00.
  "A check dated 3/24/53 $4.00.
  "A check dated 4/24/53 $4.00.
  "A check dated 5/24/53 $4.00.
  "A check dated 6/24/53 $4.00."

At the same time he read to the jury a photostat of the policy (plaintiff's exhibit No. 1) and a check dated August 22, 1952, on the Lewis State Bank of Tallahassee, Florida, which read in part "Pay to the Order of Cash, $4.00. Four and No/100 Dollars", signed by Dorman, endorsed by L. F. Ewing, appellant's agent in Tallahassee and also bearing the endorsement "Pay to the Order of the Capital City National Bank, for deposit on account of the Capital Lincoln Mercury, Incorporation." Ewing testified unequivocally, and there is nothing in the record to contradict him, that this check was given to him by the de-

ceased in reimbursement for a premium which he had paid for Dorman on July 24th preceding, to reinstate the policy as recited above was not intended for and was never sent in to appellant.

The only other evidence in support of appellee's case was her deposition in which she stated that she had driven her husband to the general store of one "Red" Smith, where the deceased filled out checks which he placed in an envelope; that they then drove to the Post Office in Tallahassee, where she sat in the car while her husband went in to post the envelope with its contents. She could not say how many or give the dates of the checks thus mailed. Mrs. Dorman was corroborated by Smith as to the filling out of the checks, but he, too, was unable to give the dates, number or amounts.

Appellant's vice president in charge of premium records testified that the eight checks read to the jury by plaintiff's counsel, bearing dates beginning November 24, 1952, and running to June 24, 1953, were all that were in the envelope bearing the stamped receipt of November 13, 1952, when it was opened in the office. Appellee's counsel sought to discredit this statement by having the witness admit he did not personally open the envelope containing the checks, yet this counsel offered the check payable to cash, dated August 22, 1952, endorsed by Ewing and finally deposited to the credit of a motor car dealer, referred to above, apparently for the purpose of proving that it was given to cover the August 24th premium, thus leaving the $8.00 used of the first dated of the twelve checks sent with the application for a new policy, to be applied to September and October. However, there is no evidence to support this contention and it is completely refuted by the contents of appellant's letter to the deceased of September 22nd, quoted above, long before any question was ever raised about the payment of the October premium.

The policy contains the following provisions:

Under the heading "Standard Provisions",

"3. If default be made in the payment of the agreed premium for this policy *the subsequent acceptance of a premium by the Company or by any of its duly authorized agents* shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained." (Emphasis supplied.)

Under the heading "General Provisions",

"1. Premiums are payable at the Home Office of the Company, but may be made to an authorized agent of the Company on or before the dates when due, in exchange for official receipts signed by the President or Treasurer and countersigned by such agent. Such a receipt shall be the only evidence of payment binding upon the Company. The payment of any premium shall not maintain the policy in force beyond the date when the next payment becomes due, except as herein provided."

It is thus clear that there is no proof to show that appellant ever received a check for the premium due October 24, 1952. Only four days elapsed from the stamping of the date of receipt on the envelope containing the checks November 13th until Dorman's death, which appellant's vice president stated was not an unusual time for processing the matter. No check was ever cashed bearing the date October 24 and, of course, the others were not due when he died. There is no premium receipt or other evidence as required by the provisions of the policy above quoted and it can scarcely be contended that appellant foresaw the death of appellee's husband and delayed communicating with him further about the matter. It appears most logical to conclude that, inasmuch as more than two-thirds of the month, October 24 to November 24, had expired and the policy had lapsed, deceased decided to begin anew with the November payment since

no benefits were to be lost by that action. In view of appellant's repeated efforts to induce him to close the proposal to continue the old policy in effect, which he failed to do until the period of grace had elapsed, and his own dilatory tactics, we can see nothing in the case to support any estoppel, which was an issue raised by the Court rather than the parties to the litigation.

We think that the appellee has failed completely to prove payment of the October 24th premium and that the policy was not in force when Dorman died.

Reversed with directions to enter judgment accordingly.